## LANG, Appellant, v. MURPHY, Respondent.

**St. Louis Court of Appeals, March 23, 1909.**

**CONTRACTS: Statute of Frauds: Payment Made on Parol Purchase of Land.** Where two parties entered a verbal agreement whereby one was to purchase from the other certain land and deliver to the other certain merchandise in part payment of the purchase price of the land, the purchaser, after delivering the merchandise, could not refuse to carry out his agreement and recover the price of the merchandise, the vendor being ready and able to carry out the contract.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*E. P. Johnson* for appellant.

Respondent testified that he sold the Hardy property some months before the commencement of this suit, and if there had been a verbal contract of sale of said property entered into between the parties, said sale of the property by respondent not only entitled appellant to recover for the account given as a part of the purchase price, but also to a lien on said property for its payment. Devore v. Devore, 138 Mo. 181; Birge v. Bock, 44 Mo. App. 69; Bennett v. Phelps, 12 Minn. 326; Durham v. Wick, 210 Pa. St. 128.

*Geo. M. Miley* for respondent.

The rule is that in order to entitle the purchaser to recover money paid in part performance of an oral contract, he must allege and prove that he offered to pay the balance but that the contract was repudiated by the vendor. 2 Am. and Eng. Ann. Cases, p. 931; Laffey v. Kaufman, 134 Cal. 391; Crabtree v. Welles, 19 Ill. 55; Cammack v. Prather (Tex.), 74 S. W. 354.

GOODE, J.—Plaintiff sued defendant on an account for four barrels of whisky sold for $369 and for interest and drayage which ran the amount up to $405.38. The goods were sold by S. J. Lang & Son, but the account was afterwards assigned to plaintiff, A. J. Lang. Defendant filed an answer in the nature of a cross-bill, setting up an agreement between him and plaintiff's assignors, S. J. Lang & Son, whom plaintiff represented in the transaction, which agreement was as follows: in November, 1905, defendant was the owner and in possession of a piece of land in the city of Hardy, in Sharpe county, Arkansas. During said month plaintiff purchased this land from defendant, promising to pay $750 for it, and deliver to defendant the whisky sued for in the petition as part of said price. Thereafter plaintiff delivered the goods to defendant in payment on the price of the real estate, promising to pay the balance in cash. Before the balance was paid or a deed for the land had been executed to plaintiff, a new and distinct contract regarding the transaction was entered into between the parties. Defendant owned and was in possession of two other parcels of real estate, to-wit: a lot in the town of Mammoth Spring, Fulton county, Arkansas, and a lot in Boyce City, Oregon county, Missouri. These two lots are described in the answer and it is averred that by mutual agreement between plaintiff and defendant, their original contract, whereby plaintiff was to purchase from defendant a lot in the city of Hardy, Arkansas, was rescinded, and instead it was agreed between them plaintiff should purchase from defendant the two parcels of land last described, should pay $1,000 for the Missouri lot and $200 for the Arkansas lot, or $1,200 in all, and the price of the whisky in controversy should go as a credit on said sum and plaintiff pay defendant the balance of $830.50 in cash. We have stated these matters according to the clear intention of the answer, though two clerical errors occurred in giving the prices of the properties, but the

mistakes are so obvious they cut no figure. It was fur-
ther averred plaintiff had not paid defendant the sum of
$830.50, or any part thereof, though defendant had per-
formed all the conditions of the contract on his part
and stood ready and willing, and is still, to convey to
plaintiff, by a good warranty deed, the two parcels of
ground and deliver possession of them; that defendant
had offered to deliver them on payment of the purchase
price, but plaintiff had refused to accept the deed or
pay the balance of the price. It is further averred de-
fendant had executed a sufficient warranty deed, con-
veying the title to the property to plaintiff and had
brought the same into court and tendered it to plaintiff;
wherefore defendant prayed for an order and decree,
directing plaintiff to accept the deed and pay the balance
of the purchase money. In reply plaintiff denied he had
ever entered into any contract or agreement with de-
fendant to purchase the lands mentioned, and alleged
that if any such agreement was ever made between the
parties, it was not reduced to writing, but was a verbal
contract and void under the statute of frauds. Plaintiff
and defendant testified in contradiction of each other
regarding the alleged contracts for the purchase of real
estate. The testimony of defendant is positive in favor
of both contracts. He swore the first one for the sale
of property in Hardy, Arkansas, was made in November,
1905, and was rescinded at plaintiff's instance in June,
1906, and the other contract for the sale and purchase
of the lots in Mammoth Spring, Arkansas, and Boyce
City, Missouri, substituted in lieu of it. The testimony
indicates plaintiff, who was a wholesale dealer in liquors,
desired to obtain the lot in Boyce City, Missouri, which
had a building on it, to have a saloon conducted there
where his liquors would be sold; that before the trans-
action was consummated, a local option election was
held in the county and resulted in prohibiting the sale
of intoxicating liquors therein, and then plaintiff did
not care to obtain the property. Plaintiff himself

denied he ever made a contract for the purchase of either parcel of real estate though he said he and defendant contemplated a deal for the lot in Hardy, but the abstract of the title furnished by defendant was not satisfactory. He swore positively he never agreed to take any other property from defendant. Letters written by plaintiff were introduced in evidence which, to our minds, prove he did agree to take the other two parcels. These letters show defendant had furnished an abstract to said two parcels of land, subsequent to the agreement about the Hardy property, and further show plaintiff objected to the chain of title in one of said abstracts, saying the title was good from the United States down to a man named Deadrick, but there was no conveyance shown from Deadrick to Mrs. Richie, who was the next grantor. As it was admitted Deadrick's name did not appear in the chain of title to the Hardy property, it is clear plaintiff had the titles to the other two pieces under advisement. The original deed executed by Deadrick had been burnt in a fire which destroyed the records of Fulton county, Arkansas, but the defect was cured by a quit-claim deed executed by Deadrick and wife to defendant. In our opinion the abstracts of the titles to the two parcels of property, taken in connection with this quit-claim deed, showed good titles to both tracts were vested in defendant at the time he tendered a warranty deed to plaintiff. It is said these abstracts were not competent evidence. The testimony shows defendant was to furnish plaintiff with abstracts of the titles, and if good titles in defendant were shown thereby, the transaction was to be completed. Plaintiff's own letters prove he had the abstract, or one of them at least, examined and criticised by a title examiner. Under these circumstances the abstracts were competent in order that the court might determine whether or not defendant had complied with his contract to furnish abstracts showing good titles. We may say, too, that in one of his letters plaintiff offered to pay defendant seventy-five dollars

to sell the lots so as to get plaintiff's money out of them (this is the expression used). The weight of the evidence was with defendant, and on it the court found the facts in his favor, and further found defendant had been able, willing and ready to perform his part of the contract, but plaintiff had refused to perform. Therefore plaintiff was denied a recovery on his account, and was given the option to complete the purchase of the land within thirty days from the date of the decree, by paying to defendant the balance due on the price, or $830.50, and from this judgment plaintiff appealed. We are not called on to determine whether the letters written by plaintiff constitute sufficient memorandums of the contracts for the purchase of the two parcels of land, to satisfy the Statute of Frauds. The decree did not compel plaintiff to take the land, but only allowed him the option to do so. Therefore the contract was not specifically enforced. The question for decision is regarding plaintiff's right to judgment for the price of the whisky which was delivered as part payment of the price of the lots, in view of his refusal to carry out the contract. Plaintiff is to blame for the agreement remaining unexecuted and cannot, in justice, compel defendant to pay money for the whisky which was to go in payment for the lots. In Galway v. Shields, 66 Mo. 313, the Supreme Court, on a review of the authorities, held a person who had paid money or property on a verbal contract for the purchase of land, could not maintain an action to recover back the money or the value of the property so paid, if the vendor of the land was willing to execute the contract. The action was identical with the case at bar, being for the value of goods sold and delivered pursuant to a verbal contract by which the goods were to be paid for in real estate. The owner of the real estate had tendered a proper deed, but the seller of the goods refused to accept it. That decision is conclusive of this appeal.

The judgment is affirmed. All concur.